IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CARA HEYM, *et al.*,                    *

    *Plaintiffs*,                    *

v.                                      *      **Case No. 1:23-cv-02092-JRR**

APG HOUSING, LLC, *et al.*,             *

    *Defendants*.                    *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiffs Cara Heym and Andrew Heym filed the present action in this court against Defendants APG Housing, LLC; Meade Communities, LLC; Corvias Group, LLC; Corvias Group d/b/a Corvias Property Management; Corvias Development – Army LLC; and Corvias Management – Army LLC. (ECF No. 1; the "Complaint"). Pending now before the court is Defendants' Motion to Dismiss Plaintiffs' Complaint. (ECF No. 17; the "Motion.")[1] The court has reviewed all papers, and no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, Defendants' Motion will be GRANTED IN PART AND DENIED IN PART.

## I.    BACKGROUND[2]

This action arises from Plaintiffs' on base housing at Aberdeen Proving Ground. (ECF No. 1 ¶ 32.) Prior to the events of this action, on April 20, 2002, Defendant Meade Communities, LLC entered into a 50-year ground lease with the United States of America through the Secretary

---

[1] The Table of Authorities to the Motion does not pair with the body of the Motion, which is to say, it's wrong. (For example, it identifies authorities cited on page 26. There is no page 26.) While not a seismic issue, the court requests that attention be paid to these clerical tools so that the court can better navigate the parties' papers.

[2] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 3.) *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

of the Army to operate military base housing.  *Id.* ¶ 18.  On May 1, 2002, Meade Communities signed a property management agreement with Picerne Management/FM, LLC, which later merged with Defendant Corvias Management – Army, LLC in 2013, to manage the on base housing for Fort Meade.  *Id.* ¶¶ 23–25.

On March 26, 2018, Plaintiff Drew Heym signed a Resident Occupancy Agreement ("ROA") for housing on base at Aberdeen Proving Ground (the "Home").[3]  *Id.* ¶¶ 29, 32; ECF No. 17-2.  Mr. Heym and Mrs. Heym subsequently moved into the Home.  (ECF No. 1 ¶ 32.)  An ROA "is a contract between the service member and Meade Communities (which owns the property)." *Id.* ¶ 30.  The ROA is an agreement between Defendant APG Housing, LLC, and Mr. Heym, and specifies that the "Home and all matters relating to" the ROA would be managed by "Corvias Management – Army, LLC" as the "Community Manager." (ECF No. 17-2 at p. 1.)  The ROA contains a specific provision related to mold:

> MOLD: The Resident acknowledges that to avoid mold growth it is important to prevent excessive moisture buildup and agrees to remove visible moisture accumulation as soon as it occurs and immediately report to Owner any evidence of excess moisture or mold or mildew inside the Home. Resident acknowledges receipt of the "Mold Information and Prevention Addendum," which is fully executed and incorporated herein by reference, and agrees to comply with all of its terms, as well as the RRG.

*Id.* at p. 5.

The ROA also includes a "Mold Information and Prevention Addendum" that "contains important information for [Mr. Heym], and responsibilities for both [Mr. Heym] and [Defendant

---

[3] The court may consider documents outside of the pleadings if they are integral to and relied upon in the Complaint, provided Plaintiffs do not raise a challenge of authenticity.  *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021) (providing that "[i]n evaluating a complaint at [the Rule 12(b)(6) motion to dismiss] stage, a court also may consider documents integral to and relied upon in the complaint, . . . so long as the plaintiff does not question their authenticity.") (citations omitted)); *see St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, No. CV ELH-21-2337, 2023 WL 2743361, at *9 (D. Md. Mar. 31, 2023) (explaining that "courts have found integral," *inter alia*, "the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute").

APG Housing, LLC].” *Id.* at p. 6.  The Addendum requires the tenant “[p]romptly notify [APG Housing, LLC] in writing about any signs of water leaks, water infiltration or mold,” and that APG Housing, LLC, “will respond in accordance with state law and the Lease Contract to repair or remedy the situation, as necessary.” *Id.*

During their time living in the Home, Plaintiffs “promptly voiced numerous complaints to” unspecified Defendants by “submitting maintenance requests pertaining to moisture and potential mold problems.”  (ECF No. 1 ¶ 33.)  In response, maintenance staff of the unspecified “Defendants” “repeatedly inspected” the Home “and indicated that the issues were a result of ‘water damage’ and not mold.” *Id.* ¶¶ 34, 57.  Defendants “denied that there was any presence of dangerous toxic substances” in the Home. *Id.* ¶ 58.  At some point, Plaintiffs had independent mold testing conducted that showed the presence of toxic mold throughout the Home. *Id.* ¶ 36.  Ms. Heym suffered nose bleeds, headaches, and progressive health issues while living in the Home. *Id.* ¶ 37.  As a direct result of her prolonged exposure to toxic mold in the Home, Ms. Heym was hospitalized and monitored for neurological, cariological, and gastrointestinal complaints, as well as fainting spells and memory issues. *Id.* ¶¶ 38–39.  Further as a result of her medical conditions, Ms. Heym had to “take significant time off” from her nursing degree program. (ECF No. 1 ¶ 40.)  Plaintiffs also incurred out of pocket expenses and “suffered property damage as a result of the mold.” *Id.* ¶ 41.  If Ms. Heym had known of the presence of toxic molds in the Home, “she would have moved out of the unit at an earlier date.” *Id.* ¶ 59.

On August 3, 2023, Plaintiffs filed this action against Defendants. *Id.* at p. 1–2.  Plaintiffs assert five counts against all Defendants: Negligence (Count I); Breach of Contract (Count II); “Intentional, Negligent, [and] Fraudulent Misrepresentation” (Count III); Violation of the Maryland Consumer Protection Act (Count IV); and “Damage to the Marital Relationship” (Count

V). *Id.* at p. 8–13.  Defendants move to dismiss the Complaint pursuant to Rules 8, 9, and 12(b)(6). (ECF No. 17.)

## II.   LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).  "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citations omitted).

**B.  Federal Rule of Civil Procedure 9(b)**

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b).  *See Iqbal*, 556 U.S. at 686 ("Rule 9(b) requires particularity when pleading 'fraud or mistake,' while allowing 'malice, intent, knowledge, and other conditions of a person's mind to be alleged generally.'"); and *Layani v. Ouazana*, No. CV ELH-20-420, 2021 WL 805405, at \*23 (D. Md. Mar. 3, 2021) ("Claims that sound in fraud, whether rooted in common law or arising under a statute, implicate the heightened pleading standard of Rule 9(b)."  "These circumstances are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999)).  They are often "referred to as the 'who, what, when, where, and how' of the alleged fraud."  *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citation omitted).  "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

### C.  Federal Rule of Civil Procedure 8[4]

Rule 8, *inter alia*, requires that a complaint set forth a short and plain statement demonstrating the pleader's entitlement to relief in order that the defendant be given fair notice of the claim and the alleged basis for same.  FED. R. CIV. P. 8; *Twombly,* 550 U.S. at 555.

### III.  <u>ANALYSIS</u>

### A.  Group Pleading[5]

Defendants first argue that Plaintiffs' Complaint constitutes improper group pleading—specifically, improperly making insufficient allegations against Defendants collectively.   In particular, Defendants assert that the Complaint should be dismissed as to Defendants Meade Communities, LLC; Corvias Group, LLC; Corvias Group d/b/a Corvias Property Management; and Corvias Development – Army, LLC, because Plaintiffs do not allege a connection between/among them and the allegations at issue.  (ECF No. 17-1 at p. 4–7.)  In response, Plaintiffs assert that they are permitted "to be less than precise on the role of each putative defendant" because they "adequately pled an interrelationship between the parties."  (ECF No. 20-1 at p. 7.)

"[D]etermining whether a complaint states a plausible claim for relief is a 'context-specific task.'"  *Langford v. Joyner*, 62 F.4th 122, 126 (4th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 679).  It is not a categorical rule "that a complaint that makes allegations collectively against 'Defendants'" will never survive a motion to dismiss.  *Id.*  However, where a plaintiff employs a "global manner of pleading, he or she must still allege 'sufficient facts to allow the court to infer liability as to *each* defendant.'"  *Id.* (emphasis in original).  *See SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422–23 (4th Cir. 2015), *as amended on reh'g in part* (Oct. 29, 2015) ("[T]he complaint

---

[4] Although the Motion indicates it is based, in part, on Rule 8, the body of the Motion rests on Rules 12 and 9; the court includes Rule 8 here for completeness.
[5] Defendants focus their argument on Defendants who were not parties to the ROA.  Defendants have, at least not explicitly, asserted a similar argument with respect to Ms. Heym.

must specify how these defendants [were] involved in the alleged conspiracy, without relying on indeterminate assertions against all defendants." (citations omitted)); *Barrett v. Bd. of Educ. of Johnston Cnty., N.C.*, 590 F. App'x 208, 210–11 (4th Cir. 2014) ("In the complaint, the Appellants failed to allege which defendant was responsible for which violation, sometimes pleading that all the defendants were responsible.  This global manner of pleading made the claims at issue less plausible.").  A pleading cannot simply "lump[] [Defendants] together in the complaint without sufficient detail," or further without "alleging any facts specific to each entity." *Wormack v. Caesars Baltimore Mgmt. Co., LLC*, No. 1:22-CV-01108-SAG, 2022 WL 2668183, at *5 (D. Md. July 11, 2022) (quoting *SD3, LLC*, 801 F.3d at 422).  "[A]t this early stage in the litigation, a plaintiff will not come to court fully armed with the requisite facts to prove their case," but the plaintiff still must allege "sufficient facts to allow the court to infer liability as to *each* defendant." *Langford*, 62 F.4th at 126 (emphasis in original) (citing *Iqbal*, 556 U.S. at 676).[6]

Plaintiffs have pled sufficient facts that, accepted as true, allow the court to infer the relevant connections of Corvias Management – Army, LLC, and APG Housing, LLC, to the allegations.  Plaintiffs allege that Corvias Management – Army, LLC, was the "Community Manager" named in the ROA.  *Id.* ¶ 14.  The ROA provides: "The Home and all matters relating to this Agreement will be managed by Corvias Management – Army, LLC."  (ECF No. 17-2 at p. 1.)  Further, and Defendants do not dispute, APG Housing, LLC, is a party to the ROA, listed as the "Owner" of the Home.  (ECF No. 1 ¶ 13; ECF No. 17-2 at p. 1.)  To dismiss them at this juncture upon such allegations would be premature.  *Cf. Addi v. Corvias Mgmt.-Army, LLC*, No.

---

[6]  Although Defendants do not expressly argue this, it seems to the court that group pleading may also run afoul of Rule 8; in other words, unless facts pled in a group fashion are, in fact, applicable to all defendants, group pleading fails to give fair notice to a defendant of precisely what it (as opposed to a co-defendant) is alleged to have done. Inasmuch as Rule 8 calls for precision and clarity, group pleading is disfavored as ambiguous in such a context.

CV ELH-19-3253, 2020 WL 5076170, at *22 (D. Md. Aug. 27, 2020) (denying dismissal of a party as premature where there was question of whether the party functioned as a landlord).

However, with respect to the remaining Defendants—Meade Communities, LLC; Corvias Group, LLC; Corvias Group d/b/a Corvias Property Management; and Corvias Development – Army, LLC—Plaintiffs have alleged no connections to the underlying events in this action.  With regard to Meade Communities, LLC, Plaintiffs' allegations concern its connection to housing at Fort Meade, not Aberdeen Proving Ground.  (ECF No. 1. ¶¶ 23–25, 29-30.)  Further, Plaintiffs have not alleged any relationship between the "Corvias" Defendants, and the allegations do not pertain to these Defendants in any way.  The allegations, as Defendants argue are, "indeterminate assertions against all [D]efendants," that treat Defendants as a collective without an underlying justification for doing so.  (ECF No. 17-1 at p. 5.)   Thus, Plaintiffs have not alleged sufficient facts for the court to infer liability as to each individual Defendant above.  *See Langford*, 62 F.4th at 126, *supra*.

Plaintiffs' reliance on *CASA de Maryland, Inc. v. Arbor Realty Tr., Inc.,* is not persuasive. While it is true that initially Plaintiffs may "be less than precise on the role of each putative defendant," they must still assert a "theory of connection among the defendants."  No. CV DKC 21-1778, 2022 WL 4080320, at *4 (D. Md. Sept. 6, 2022).  In *CASA de Maryland, Inc.*, those allegations were much more expansive than are pled here:

> Plaintiffs' theory of connection among the defendants is essentially that (1) Defendants Arbor Realty Trust, Arbor Realty Limited Partnership, Arbor Realty SR, and Arbor Management Acquisition Company, are an interconnected series of entities at the top of a corporate pyramid who more or less work together to make decisions for the Arbor corporate pyramid; (2) Hyattsville United, Bedford United, and Victoria United are owned and/or controlled by the "Arbor Family Defendants" and are at the bottom of the Arbor corporate pyramid; and (3) Realty Management Services is the

> property manager for Bedford Station and Victoria Station and thus,
> while not part of the Arbor corporate pyramid, is connected.

*Id.* Plaintiffs did not make those allegations here: in fact, it was not apparent until Plaintiffs'
response to the Motion that their theory of connection is that some Defendants have addresses and
a registered agent in common. (ECF No. 20-1 at p. 9.) The issue here, unlike in *CASA de
Maryland*, is that Plaintiffs have not alleged interconnection between/among certain Defendants
while simultaneously pleading the allegations collectively against all Defendants. *See Wormack*,
2022 WL 2668183, at *5, *supra*; *see also* Fed. R. Civ. P. 8 and n.6, *supra*. The court will therefore
dismiss the claims as against Defendants Meade Communities, LLC; Corvias Group, LLC;
Corvias Group d/b/a Corvias Property Management; and Corvias Development – Army, LLC, for
failure to state a claim. The court's remaining analysis concerns Defendants' arguments with
respect to the remaining Defendants—APG Housing, LLC, and Corvias Management – Army,
LLC.

### B. Count I: Negligence[7]

As to Count I, Defendants argue that Plaintiffs have alleged neither a duty owed nor a
"clear act of negligence . . . beyond mere breach of contract." (ECF No. 17-1 at p. 7–8.)
Defendants focus their argument on failure to allege a duty and make a cursory assertion that
"Count I is devoid of any allegation that any of the Defendants engaged in any act or omission
constituting negligence." *Id.* at p. 7–10. Plaintiffs respond that they allege Defendants owed a
duty of care, specifically citing a landowner's duty of care owed to invitees. (ECF No. 20-1 at p.
11.)

---

[7] This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Aberdeen Proving Ground is a
federal enclave. *See Jones v. John Crane-Houdaille, Inc.*, No. CIV. CCB-11-2374, 2012 WL 1197391, at *3 (D. Md.
Apr. 6, 2012). "In a civil action brought to recover on account of an injury sustained in [a federal enclave], the rights
of the parties shall be governed by the law of the State in which the place is located." 28 U.S.C. § 5001(b). Because
Aberdeen Proving Ground is located in Maryland, the court applies Maryland law to plaintiff's state law claims.

"A plaintiff bringing a negligence claim must establish four elements: 'a duty owed to him (or to a class of which he is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages.'" *Kiriakos v. Phillips*, 448 Md. 440, 456 (2016) (quoting *Jacques v. First Nat'l Bank of Md.,* 307 Md. 527, 531 (1986)). "Because '[t]here can be no negligence where there is no duty that is due[,]' an analysis as to negligence usually begins 'with the question of whether a legally cognizable duty exi[s]ts.'" *Kennedy Krieger Inst., Inc. v. Partlow*, 460 Md. 607, 633 (2018) (*Doe v. Pharmacia & Upjohn Co.*, 388 Md. 407, 414 (2005)). A duty is "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Pharmacia & Upjohn Co.*, 388 Md. at 415 (quoting *Dehn v. Edgecombe*, 384 Md. 606, 619 (2005)).

"The mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." *Blondell v. Littlepage*, 413 Md. 96, 120–21 (2010) (quoting *Jacques*, 307 Md. at 533–35). *See Wilmington Trust Co. v. Clark*, 289 Md. 313, 328–329 (1981) ("While a tort action in favor of a contracting party can be founded upon a duty arising out of the contractual relationship, . . . the duty giving rise to the tort cause of action must be independent of the contractual obligation . . . Mere failure to perform a contractual duty, without more, is not an actionable tort."). Still, "[w]here a contractual relationship exists between persons and at the same time a duty is imposed by or arises out of the circumstances surrounding or attending the transaction, the breach of such duty is a tort and the injured party may have his remedy by an action on the case." *Jacques*, 307 Md. at 534 (citation omitted). "[T]he duty giving rise to a tort action must have some independent basis." *Mesmer v. Maryland Auto. Ins. Fund*, 353 Md. 241, 253 (1999). While "[t]here is no single principle or simple test for determining when a defendant's breach of a

10

contract will also breach an independent duty and give rise to a tort action," where a defendant has "proceeded on the basis that a contractual obligation exists, has undertaken that obligation, and has undertaken it in violation of the appropriate standard of care, . . . the plaintiff may, in some circumstances, maintain a tort action." *Id.* at 254.

"At common law and in the absence of a statute, 'a landlord ordinarily has no duty to keep rental premises in repair, or to inspect the rental premises either at the inception of the lease or during the lease term.'"[8] *Hector v. Bank of New York Mellon*, 473 Md. 535, 558–59 (2021) (quoting *Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 78 (2003)). Accordingly, a landlord "is not ordinarily liable to a tenant or guest of a tenant for injuries from a hazardous condition in the leased premises that comes into existence after the tenant has taken possession." *Matthews v. Amberwood Assocs. Ltd. P'ship, Inc.*, 351 Md. 544, 555 (1998) (citing *Marshall v. Price*, 162 Md. 687, 689 (1932)). However, that principle "is not absolute and has exceptions." *Id.* "[W]hether a landlord owes a duty to his or her tenants . . . with respect to dangerous or defective conditions on the property, of which the landlord has notice, depends upon the circumstances presented." *Id.* at 553. *Cf. Hanson-Metayer v. Rach*, No. 1657 Sept. 2017, 2018 WL 5045773, at *16 (Md. Ct. Spec. App. Oct. 17, 2018) ("Maryland case law has recognized that, under general principles of negligence, a landlord has a duty to exercise reasonable care for a tenant's safety. Critical to the determination of the existence of a landlord's duty is the degree to which a landlord exercises control over the conditions of the property.").

"[W]hen a landlord has agreed to make repairs there is a *duty* resting on him to do so, and upon his failure the tenant may either sue on his contract or bring an action on the case founded in

---

[8] Plaintiffs have not alleged that Defendants owed a duty pursuant to a statute or ordinance. (ECF No. 1 ¶¶ 43–49; ECF No. 20-1 at p. 10–12.) *See Addi*, 2020 WL 5076170, at *23 ("[E]ven in the absence of a contractual duty, a landlord may be subject to an applicable statutory obligation.").

tort for neglect of that duty." *Bocchini v. Gorn Mgmt. Co.*, 69 Md. App. 1, 17 (1986) (emphasis in original) (citation omitted). Where there is evidence of "explicit notice of the defect, recognition by the landlord of its dangers[,] and ample opportunity to remedy it," a tenant may maintain an action in tort liability "for injuries sustained as a result of an uncorrected defect in rented quarters if there was a contractual obligation to repair the particular defect and a reasonable opportunity to correct it." *Farley v. Yerman*, 231 Md. 444, 448 (1963).

Plaintiffs allege that Defendants owed them a duty to maintain safe and habitable premises, and that Defendants breached that duty by "failing to maintain the premises" in a manner that was free of toxic molds and water damage. (ECF No. 1 ¶¶ 43–44.) Plaintiffs allege that they made numerous, prompt complaints about moisture and mold problems, yet Defendants repeatedly "indicated that the issues were a result of 'water damage' and not mold." *Id.* ¶ 34. Specifically, Defendants are alleged to have breached their duty of care by, *inter alia*, "failing to test the property for toxic mold in a timely manner" and "failing to adequately and properly remove the dangerous and hazardous materials." *Id.* ¶ 46.

Drawing all reasonable inferences in Plaintiffs' favor, the court finds that Plaintiffs have sufficiently pled a claim for negligence. While the court does not find compelling Plaintiffs' argument that they were common law invitees owed a duty of care by Defendants, *see Matthews*, 351 Md. at 555, *supra*, allegations in their Complaint may align with the exceptions discussed above—Plaintiffs put Defendants on notice of potential of mold, and Defendants failed to address and correct the issue. As a result of their failure to address the mold, Plaintiffs allege that they suffered losses and harm. (ECF No. 1 ¶¶ 47–48.)

The court appreciates Defendants' reliance on *Worden v. 3203 Farmington LLC*, but it does not change the court's analysis here. *See* ECF No. 17-1 at p. 9 (citing *Worden v. 3203*

*Farmington LLC*, No. 1373, Sept. 2021, 2023 WL 4945171 (Md. App. Ct. Aug. 3, 2023)).  In

*Worden*, the court did not address the extent to which the plaintiffs made the defendants aware of

the underlying issues with the leased property (*e.g.*, the presence of rodents or vermin, in advance

of the nonpayment of rent) or the defendants' responses to any complaints.  2023 WL 4945171, at

*1–2.  Here, the court's analysis of whether a duty was owed turns on Defendants' response to

Plaintiffs' mold and moisture complaints.   In view of the foregoing, the court will deny

Defendants' Motion to the extent it seeks dismissal of Count I as against the remaining Defendants.

Defendants are free, of course, to raise this issue again at the Rule 56 stage.

### C.  Count II: Breach of Contract

Defendants further contend that Plaintiffs' breach of contract claim fails due to a lack of

"certainty or definiteness." (ECF No. 17-1 at p. 11.)  In particular, Defendants argue that Plaintiffs

do not identify a specific contract provision that was breached or allege how Defendants

purportedly breached the contract.  *Id.*   Plaintiffs respond that they have pled their claim

sufficiently to satisfy Rule 8.  (ECF No. 20-1 at p. 13.)

"[I]n order to state a claim for breach of contract, a plaintiff need only allege the existence

of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that

obligation by the defendant." *RRC Ne., LLC v. BAA Maryland, Inc.*, 413 Md. 638, 658 (2010)

(*Taylor v. NationsBank, N.A.,* 365 Md. 166, 175 (2001)).  "Maryland law does not require a

plaintiff to cite a specific contractual provision to survive a motion to dismiss."  *Class Produce

Grp., LLC v. Harleysville Worcester Ins. Co.*, No. CV ELH-16-3431, 2018 WL 1471682, at *9 (D.

Md. Mar. 23, 2018).  A plaintiff must still, however, allege facts "to adequately show a sufficient

writing exists."  *Student "B" v. Howard Cnty. Cmty. Coll.*, 512 F. Supp. 3d 610, 616 (D. Md.

2021).

Plaintiffs' Complaint identifies the contract at issue—the ROA—and explicitly alleges that Defendants breached it by failing to "timely, properly, and appropriately address the condition and remove the toxic spores and other toxic materials" from the Home. (ECF No. 1 ¶¶ 33–36, 53.) The Complaint adequately alleges the contract's existence and makes clear that Plaintiffs' breach of contract allegations pertain to Defendants' contractual duties regarding mold and repairs. More is not required at this time. *See Class Produce Grp., LLC*, 2018 WL 1471682, at \*9, *supra*. Plaintiffs have sufficiently pled a claim for breach of contract.

### D. Count III: Intentional, Negligent, and Fraudulent Misrepresentation

Defendants argue that Plaintiffs' claim for "intentional, negligent, and fraudulent misrepresentation" should be dismissed because they have failed "to describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." (ECF No. 17-1 at p. 13 (citations omitted)). Further, they argue that Plaintiffs do not allege facts that they "relied on the misrepresentation and had the right to rely on it," where they voiced complaints and sought out independent testing. *Id.* at p. 14–15.

"Under Maryland law, '[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'" *Topline Solutions, Inc. v. Sandler Sys, Inc.*, No. ELH-09-3102, 2017 WL 1862445, at \*32 (D. Md. May 8, 2017) (quoting *Sass v. Andrew*, 152 Md. App. 406, 432 (2003)). As explained *supra*, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Thus, the pleading must contain "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *See Weidman*, 776 F.3d at 219, *supra*. "[T]he heightened pleading standard

14

under Rule 9(b) serves several purposes.  Most especially, it seeks to put the defendant on notice

of its alleged misconduct and to prevent plaintiffs from filing 'frivolous suits . . . in which all the

facts are learned after discovery.'"  *State Constr. Corp. v. Slone Assocs., Inc.*, 385 F. Supp. 3d 449,

471 (D. Md. 2019) (quoting *U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451,

456 (4th Cir. 2013)).

The elements of intentional or fraudulent misrepresentation under Maryland law are as

follows:

> (1) the defendant made a false representation to the plaintiff,
> (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth,
> (3) the misrepresentation was made for the purpose of defrauding the plaintiff,
> (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and
> (5) the plaintiff suffered compensable injury as a result of the misrepresentation.

*Id.* at 469 (quoting *Hoffman v. Stamper*, 385 Md. 1, 28 (2005)).  *See Gourdine v. Crews*, 405 Md.

722, 758 (2008) (same).  With regard to the third element, a plaintiff must allege that the defendant

intended to defraud the plaintiff "*at the time of the misrepresentation*."  *Id.* at 470 (emphasis in

original).

Here, the only allegation of a purported misrepresentation that the court can discern is that

Defendants "repeatedly inspected the house after the complaints and indicated that the issues were

a result of 'water damage' and not mold."  (ECF No. 1 ¶ 34.)  These "indicat[ions]" were made by

Defendants' "maintenance staff."  *Id.* ¶¶ 57–58.  This is insufficient to satisfy the required pleading

of fraud under Rule 9(b).  As to the third element, Plaintiffs do not allege that the maintenance

staff's representations were made for the purposes of defrauding them; instead Plaintiffs point to

their allegations that, absent the statements of the maintenance staff, they would have moved out

of the Home earlier and that Ms. Heym suffered injuries as a result. (ECF No. 20-1 at p. 14.) Neither allegation clearly alleges, or supports a plausible inference, that maintenance staff intentionally misrepresented their findings of water damage with the purpose and expectation that Plaintiffs would rely upon it to their detriment. *See State Constr. Corp.*, 385 F. Supp. 3d at 469–70, *supra*. Similarly, as to the second element, Plaintiffs' allegation that Defendants' maintenance staff "repeatedly and recklessly denied there was any reason to be concerned over the water leaks Plaintiffs reported," similarly does not on its face allege that the maintenance staff "knew" that their representation as to the mold was false or that they made the representation with a "reckless indifference to its truth." *See id.* at 469, *supra*.

Even assuming the foregoing allegations were sufficient, Plaintiffs' Complaint still fails for lack of specificity – for failure to identify the who, when, and how of the alleged fraud. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d at 379. While Plaintiffs allege that misrepresentations were made by "Defendants' maintenance staff" (ECF No. 1 ¶ 57), Plaintiffs do not allege approximately how many staff made such statements, how many statements were made, when such statements were made, how the statements were communicated, or with which of the six Defendants the maintenance staff speakers were associated or employed. Plaintiffs also fail to allege the misrepresentations with specificity, instead describing them as "denials" of mold and "indications" of water damage. (ECF No. 1 ¶¶ 34, 58.) Much, if not all, of this information is within Plaintiffs' knowledge, or should be, without discovery.

While some of the aforementioned deficiencies may not on their own be fatal, *see State Constr. Corp.*, 385 F. Supp. 3d at 471, taken together they render the pleading deficient. Count III will therefore be dismissed.[9]

---

[9] The court is unable to discern if Plaintiffs intended to assert a negligent misrepresentation claim in the alternative to their intentional/fraudulent inducement claim, as they are pled as one count. Plaintiffs also did not note a negligent

### E.  Count IV: Violation of the Maryland Consumer Protection Act

In their opposition to the Motion, Plaintiffs "voluntarily withdraw this Count."  (ECF No. 20 at p. 2.)  *See Ferdinand-Davenport v. Children's Child*, 742 F.Supp.2d 772, 777 (D. Md. 2010) ("By her failure to respond to this argument, the plaintiff abandons [the] claim.").  Accordingly, the court will dismiss Count IV.

### F.  Count V: Damage to the Marital Relationship

Finally, Defendants argue that Plaintiffs fail to state a claim as to Count V because they make no allegations that their personal injuries resulted in "loss of society, assistance, or conjugal fellowship."  (ECF No. 17-1.)  Plaintiffs respond that they sufficiently pled the claim by asserting that Ms. Heym received medical treatment for conditions as a result of her mold exposure and that, "as a direct and proximate cause of the alleged claims," they suffered damages to their marital relationship. (ECF No. 20-1 at p. 16.)

Based on the asserted allegations, the court construes Plaintiffs' Count V as one for "loss of consortium."  *See Schmidt v. Town of Cheverly, MD.*, 212 F. Supp. 3d 573, 584 (D. Md. 2016) ("'[H]arm to the marital unit' is a tort not yet seen in Maryland."). A loss of consortium claim "arises from the loss of society, affection, assistance, and conjugal fellowship suffered by the marital unit as a result of the physical injury to one spouse through the tortious conduct of a third party." *Neal v. United States*, 599 F. Supp. 3d 270, 298 (D. Md. 2022) (quoting *Oaks v. Connors*, 339 Md. 24, 33–34 (1995)).  *See Owens-Illinois, Inc. v. Cook*, 386 Md. 468, 487 (2005) (same).

---

misrepresentation claim in their response (although Defendants did not assert an argument as to such a claim).  Given that the court is unable to discern what Plaintiffs intended when they titled Count III "Intentional, Negligent, & Fraudulent Misrepresentation," Plaintiffs have similarly failed to "give [D]efendant[s] fair notice of what the . . . claim is and the grounds upon which it rests," as required by Rule 8(a).  *Twombly*, 550 U.S. at 555.  To the extent that Plaintiffs did intend to raise two separate claims, they may clarify by amended pleading, should they so choose.  The court takes this moment to notes that while a negligent misrepresentation claim is not subject to the heightened pleading of Rule 9(b), *see Baltimore Cnty. v. Cigna Healthcare*, 238 F. App'x 914, 921 (4th Cir. 2007), some of the deficiencies noted in Plaintiffs' pleading would still be relevant to the court's assessment of a misrepresentation claim sounding in negligence.

A loss of consortium claim is "comprised of two elements: '(1) injury to the marital relationship, which is (2) caused by the wrongful conduct of the defendant.'" *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 739 (D. Md. 2013) (quoting *French v. Hines,* 182 Md. App. 201, 267 (2008)).

As the Supreme Court of Maryland has explained:

> There is . . . an interdependence between the injury to the marital unit and the action of the defendant that causes that injury: "whether it be the husband or wife who is injured, the negligence of the defendant directly affects the entity through its member who sustains the physical injury. Once the rule is established, the possible loss to the absent member of the entity is a direct and expectable result of the negligence. *See Mahnke v. Moore,* 197 Md. 61, 69 (1951) and Restatement, Torts § 905, Comments e and f." *Id.* at 114. *Oaks* is to like effect. There, we opined, "We believe that damages to a marital relationship are frequently inextricably intertwined with the harm sustained by the injured spouse," explaining:

> "the pain, suffering, and depression that are personal to the injured victim will inevitably affect the relationship with that person's spouse. Whether these injuries are claimed individually, by the marital unit, or by both, however, they constitute noneconomic damages flowing from a single source, the tortious injury to the victim spouse."

> 339 Md. at 37. Thus, "[a] loss of consortium claim is derivative of the injured spouse's claim for personal injury." *Id.* at 38; *Okwa v. Harper,* 360 Md. 161, 176 (2000); *Klein v. Sears, Roebuck and Co.,* 92 Md. App. 477, 493 . . . .

*Owens-Illinois, Inc.*, 386 Md. at 488–89.  Thus, "[a] claim of 'loss of consortium' is a derivative claim, predicated on" the underlying tort.  *Schmidt*, 212 F. Supp. 3d at 584.

The court agrees with Defendants that Plaintiffs have failed to allege sufficient facts for it to infer a loss of consortium, namely because Plaintiffs rely on a single conclusory statement devoid of factual foundation —"As a direct and proximate result of the alleged negligence and

other claims set forth above, Plaintiffs have both suffered damages to their marital relationship." (ECF No. 1 ¶ 63.)  Plaintiffs are certainly not required to provide "detailed factual allegations," but they still must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Here, that is all they have done.  The claim will be dismissed.

### G.  Plaintiffs' Request to Amend the Complaint

Plaintiffs request permission to amend the Complaint should the court find any claim deficient.  (ECF No. 16–17.)  Defendants do not oppose the request in their subsequent reply, but did include (perhaps a rote) request for dismissal with prejudice in the Motion.  (ECF No. 17-1 at p. 20; ECF No. 21.)  Rule 15(a) counsels that "[t]he court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).  "The Fourth Circuit's policy is 'to liberally allow amendment.'" *Lavin v. Safeco Ins. Co. of Am.*, No. SAG 22-1788, 2022 WL 17342051, at *1 (D. Md. Nov. 30, 2022) (quoting *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010)).  It is early in this litigation, and discovery has not yet commenced.  Moreover, there is no apparent prejudice to Defendants or bad faith by Plaintiffs, and, in view of the pleading deficiencies above, amendment would not be futile on its face. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The court will therefore grant Plaintiffs leave to amend the Complaint in order to correct the pleading deficiencies noted herein.

## IV.  <u>CONCLUSION</u>

For the reasons set forth herein, by separate order, Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 17) will be GRANTED IN PART AND DENIED IN PART.  The Motion will be granted as to Counts III, IV, and V as to Defendants Meade Communities, LLC; Corvias Group, LLC; Corvias Group d/b/a Corvias Property Management; and Corvias

Development – Army, LLC;  and denied as to Counts I and II against Defendants APG Housing,

LLC and Corvias Management – Army, LLC.


May 21, 2024                                                                    /s/
                                                                          Julie R. Rubin
                                                                          United States District Judge