UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P: (410) 962-4953 | F: (410) 962-2985
mdd_jmcchambers@mdd.uscourts.gov

June 11, 2025

LETTER ORDER AND OPINION TO COUNSEL

RE:   *Heym, et al. v. APG Housing, LLC, et al.*
      Civil No. 1:23-cv-02092-JRR

Dear Counsel:

Plaintiffs, Andrew and Cara Heym, assert several claims against Defendants, APG Housing, LLC, and Corvias Management-Army, LLC, based on Defendants' alleged failure to remedy a toxic mold problem in Plaintiffs' rental home, located at the Aberdeen Proving Ground ("APG"). (ECF No. 24). Presently before the Court is Defendants' Motion to Compel in which they ask the Court to order Plaintiffs to supplement their answers to interrogatories and produce additional documents. (ECF No. 56). The motion is unopposed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, Defendants' motion shall be GRANTED in part and DENIED in part.

### I.   Background

Defendants originally propounded discovery on Plaintiffs on August 6, 2024, and Plaintiffs served their initial responses and document production on October 4, 2024. (ECF No. 56 at 1).[1] Defendants contend they identified several material deficiencies in Plaintiffs' discovery responses and sent Plaintiffs a deficiency letter on October 28, 2024. (ECF No. 56-1). Following a meet-and-confer call, Plaintiffs' counsel agreed to supplement Plaintiffs' discovery responses by December 16, 2024. *Id.* Plaintiffs, however, did not supplement their answers to interrogatories until December 20, 2024, and no additional documents were produced. *Id.* Defendants maintain the supplemental answers were unverified and remained deficient. *Id.*

Defendants sent Plaintiffs a letter on January 3, 2025, requesting that Plaintiffs correct their discovery deficiencies by January 10, 2025. (ECF No. 56-2). When no further responses were served, on January 24, 2025, Defendants filed a request for a pre-motion conference to resolve the outstanding discovery disputes. (ECF No. 44). Plaintiffs thereafter served second supplemental

---

[1] Defendants note that the answers to interrogatories served on October 4, 2024 were unverified. (ECF No. 56 at 1). Verified responses were served four days later. *Id.*

answers to interrogatories on February 3, 2025, but still did not produce any additional documents. (ECF No. 56 at 1).

The parties appeared before United States District Judge Julie R. Rubin on February 6, 2025 for the requested pre-motion conference. It is the Court's understanding that Judge Rubin instructed Plaintiffs to supplement their interrogatory responses and document production at the pre-motion conference.[2] Plaintiffs provided a supplemental document production on February 28, 2025, but still have yet to supplement their answers to interrogatories. (ECF No. 56 at 1). On March 5, 2025, Defendants informed Plaintiffs that their discovery responses remained deficient in numerous respects, and indicated that failure to remedy the deficiencies by March 11, 2025 would result in a motion to compel. (ECF No. 56-4). Defendants ultimately filed a motion to compel on March 18, 2025. (ECF No. 56).

This matter was referred to the undersigned for discovery and all related scheduling by Judge Rubin on March 25, 2025. (ECF No. 59). Since then, Plaintiffs' counsel moved to withdraw from this case, a motion which Judge Rubin granted on April 2, 2025. (ECF Nos. 62 & 63). On April 3, 2025, the undersigned granted Plaintiffs a fourteen (14) day extension to respond to Defendants' motion to compel. (ECF No. 66). On April 10, 2025, the Court docketed a second order extending Plaintiffs' deadline to oppose Defendants' motion to compel in light of correspondence received from Plaintiffs, who were by that time proceeding *pro se*. (ECF No. 67). Specifically, the Court directed Plaintiffs to file a status report regarding their efforts to secure new counsel by April 30, 2025, and extended the deadline to the sooner of fifteen (15) days after new counsel entered their appearance, or May 15, 2025. *Id.* No attorney has entered their appearance on behalf of Plaintiffs. Nonetheless, on May 22, 2025, the undersigned granted Plaintiffs a final extension to respond to Defendants' motion to compel. (ECF No. 71). The Court set a deadline of May 30, 2025, and forewarned Plaintiffs that if no response was filed, the motion would be considered unopposed. *Id.*

To date, no response has been filed and Defendants' motion to compel is therefore unopposed. Notwithstanding that lack of opposition, the Court will consider the motion on its merits, subject to the appropriate analysis under the Federal Rules of Civil Procedure.

**II.    Analysis**

        A.  *Plaintiffs' Responses to Requests for Production of Documents*

              a.  <u>Request for Production Nos. 5-10, 12-13, and 18-20: Text Messages and Social Media</u>

---

[2] Defendants state that Judge Rubin directed Plaintiffs to supplement their discovery responses. (ECF No. 56 at 1).

In Request for Production Nos. 5-10, 12-13, and 18-20, Defendants seek production of "all documents and communications concerning Plaintiffs' home at APG, any housing or habitability issues, and repair or maintenance as a result of housing or habitability issues, physical, emotional, or psychological injuries, and any damages or losses suffered by Plaintiffs." (ECF No. 56 at 2; ECF No. 56-6 at 15-20). Although these Requests for Production pertain to many categories of documents, Defendants specifically ask that the Court order Plaintiffs to search for and produce any responsive *communications*, including but not limited to text messages, WhatsApp messages, and social media posts or messages, and note that Plaintiffs have not yet produced any text or social media messages. *Id.*

Federal Rule of Civil Procedure 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The Court has reviewed Request for Production Nos. 5-10, 12-13, and 18-20, and concludes that the communications sought are plainly relevant to either Plaintiffs' allegations that Defendants failed to address a mold issue in the rental property, or relevant to Plaintiffs' claimed damages. (ECF No. 56-6 at 15-20); *see also Yomi v. Arc of Washington Cnty., Inc.*, No. SAG-22-964, 2023 WL 11972304, at *2 (D. Md. Mar. 20, 2023) (quoting *Carr v. Doubl T Diner*, 272 F.R.D. 431, 433 (D. Md. 2010)) ("The scope of relevancy under discovery rules is broad, such that relevancy encompasses any matter that bears or may bear on any issue that is or may be in the case."). The Court will therefore direct Plaintiffs to search for and produce communications responsive to Request for Production Nos. 5-10, 12-13, and 18-20.

      b. <u>Request for Production Nos. 5, 10, and 19: Documents Regarding Prior Housing or Habitability Issues</u>

In Request for Production Nos. 5, 10, and 19, Defendants seek all documents and communications relating to any homes Plaintiffs resided in during the past ten (10) years, including documents concerning habitability inspections, remediation, and maintenance or repairs. (ECF No. 56 at 2; ECF No. 56-6 at 15-20). Defendants state that Plaintiffs have so far only produced documents related to their home at APG, though they each listed homes they resided in prior to and after leaving APG in their answers to interrogatories. *Id.*; ECF No. 56-5 at 4. The records sought could be relevant to establishing whether Plaintiffs were exposed to mold in prior or subsequent housing rentals, a question which goes directly to Defendants' liability. The records are certainly within the scope of discovery, and the Court will therefore order Plaintiffs to search

3

for and produce documents responsive to Request for Production Nos. 5, 10, and 19 which pertain to the addresses listed in their answers to interrogatories. *See* ECF No. 56-5 at 4.

### c. Request for Production No. 16: Mr. Heym's Physical Fitness Tests

Defendants next seek "[a]ll documents concerning any physical fitness tests that [Mr. Heym] participated in within the last ten (10) years, including but not limited to the Occupational Physical Assessment Test, and/or the Army Combat Fitness Test." (ECF No. 56-6 at 18). Mr. Heym simply provides the response of "[n]one" in his written responses, and reserves the right to supplement the request if further documentation is received. *Id.* Defendants note that individuals, like Mr. Heym, who are enlisted in the army are required to participate in yearly physical fitness tests, and argue the requested records must therefore exist and are relevant to Plaintiffs' claims for personal injury damages. (ECF No. 56 at 2). The Court agrees. While Plaintiffs' Amended Complaint primarily asserts that Ms. Heym, and not Mr. Heym, suffered physical symptoms as a result of mold exposure, (ECF No. 24), Mr. Heym does allege that he experienced depression due to his "military housing experience at APG" in his answers to interrogatories. (ECF No. 56-6 at 9). Evidence of Mr. Heym's depression may be contained in his medical records, and is relevant to establishing damages in this matter. Additionally, the Court notes that Mr. Heym has an obligation to obtain the requested records from his medical providers, as Rule 34 of the Federal Rules of Civil Procedure mandates production of documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1); *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 515 (D. Md. 2009) ("Rule 34 'control' would not require a party to have legal ownership or actual physical possession of any documents at issue. Instead, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action.") (internal quotation marks and citations omitted). Mr. Heym is therefore directed to locate and produce documents responsive to Request for Production No. 16.

### d. Metadata

Defendants next ask that the Court compel Plaintiffs to provide metadata for all emails and photos produced so far. (ECF No. 56 at 2). Defendants state that Plaintiffs have not produced any metadata, and maintain that production of metadata is required by the Uniform Instructions and Definitions for Use in Discovery Requests for the District of Maryland. *Id.* The Court has reviewed the referenced Uniform Instructions and Definitions, but does not view them as mandating the production of metadata. In fact, the only reference to metadata appears to be in reference to developing a privilege log. *See* Loc. R. App. D (D. Md. 2023).

The undersigned will instead refer to the Principles for the Discovery of Electronically Stored Information in Civil Cases ("ESI Principles"), which is a "voluntary set of guidelines for managing discovery of ESI[.]" *Bobb v. FinePoints Priv. Duty Healthcare, LLC*, No. JKB-23-03129, 2024 WL 4355048, at *2 (D. Md. Sep. 30, 2024) (citing *Principles for the Discovery of*

4

*Electronically Stored Information in Civil Cases* (D. Md.)).[3] The ESI Principles explain that "[m]etadata is an important part of ESI and should be considered for production in every case[,]" but caution that its production "should be consistent with the proportionality principles" of Federal Rule of Civil Procedure 26. *ESI Principles* 2.04(d). In Appendix 3, titled "Metadata Reference Guide," the ESI Principles further provide:

> Because metadata is defined so broadly, a blanket request for the production of metadata may be unhelpful. The metadata values associated with a particular file or information item vary according to the nature of the item and its use. For example, the relevant metadata from a word processed document differs from e-mail metadata and from metadata pertinent to a database.
>
> Metadata is unlike almost any other discoverable information because its import may flow from its probative value as relevant evidence, its utility in functionally abetting the searching, sorting, and interpretation of ESI, or both. If the origin, use, distribution, destruction, or integrity of electronic evidence is at issue, the relevant "digital DNA" of metadata is probative evidence that should be preserved and produced. Likewise, if the metadata materially facilitates the searching, sorting, and management of ESI, it should be preserved and produced for its utility.
>
> Absent a specific agreement between parties or instruction from the Court as to the form or forms of production, parties typically produce information in the form or forms the information is ordinarily maintained or in some other reasonably usable form.

*Id.* at App. 3. With these principles in mind, the Court declines to broadly order Plaintiffs to produce metadata for all photos and emails they have produced thus far. Instead, Defendants should narrow the type of metadata they seek, perhaps with reference to the ESI Principles if useful, and confer with Plaintiffs to determine if an agreement can be reached.

### B. Plaintiffs' Answers to Interrogatories

#### a. Interrogatory No. 2

Interrogatory No. 2 asks Plaintiffs to "[i]dentify all Persons who are likely to have personal knowledge of any fact alleged in the pleadings, and state the subject matter of the personal knowledge possessed by such Person." (ECF No. 56-5 at 3; ECF No. 56-6 at 3). Plaintiffs identify only three individuals in their respective answers. *Id.*[4] Defendants point out that Plaintiffs have produced documents "reflecting numerous additional individuals with knowledge" and note neither Plaintiff include family members, friends, or neighbors in their answers. (ECF No. 56 at

---

[3] The ESI Principles are available at: https://www.mdd.uscourts.gov/sites/mdd/files/ESI-Principles.pdf.
[4] Further, Plaintiffs each identify one another as a person having personal knowledge, so there are actually only two individuals identified who are not party to the litigation. (ECF No. 56-5 at 3; ECF No. 56-6 at 3).

3). Based on the very few individuals named and the absence of any reference to friends and family, it appears probable that Plaintiffs' answers are incomplete. The Court will therefore direct Plaintiffs to supplement their Answers to Interrogatory No. 2. *See Cohens v. Maryland*, No. WDQ 11-CV-03419, 2013 WL 12422248, at * (D. Md. Apr. 18, 2013) (citing *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 360-65 (D. Md. 2012)) ("When an answer to an interrogatory is incomplete, a court may compel the answering party to clarify or supplement his initial answer."). Plaintiffs should also keep in mind that the failure to identify individuals with knowledge when requested could result in preclusion at trial of any proposed witnesses by Plaintiffs not so identified.

### b. Interrogatory No. 7

Interrogatory No. 7 requests that Plaintiffs "[d]escribe in detail every instance in which [Plaintiffs] sent or received a complaint, inquiry, or other Communication Concerning a housing or habitability issue" in the home Plaintiffs rented at APG. (ECF No. 56-6 at 5; ECF No. 56-6 at 6). Neither Plaintiff provides a specific instance in which they complained of a housing or habitability issue. Mr. Heym states, "I do not have dates for the times I complained about an issue during my residency at APG. It was multiple times throughout the 2.5 years I lived there." (ECF No. 56-6). Ms. Heym references a work order submitted as the first time a complaint was filed, but otherwise simply refers Defendants to her document production. (ECF No. 56-5 at 5-6).

Plaintiffs fail to include any specific instances of complaints, despite producing documents to which they could presumably refer to in drafting their answers. "A party answering interrogatories must provide to the requesting party all 'information that is available to it and that can be given without undue labor and expense.'" *Lynn*, 285 F.R.D. at 360 (quoting 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2174 (3d ed. 2012)). While it is possible that Plaintiffs may not be able to create an exhaustive list of every instance they complained of a housing or habitability issue at APG, they can certainly compile a list of times they communicated complaints by reviewing their respective document productions. The Court concludes that Plaintiffs' answers to Interrogatory No. 7 are vague and incomplete, and will therefore direct Plaintiffs to supplement their responses, to include specific instances of complaints and communications regarding housing issues at APG.

### c. Interrogatory No. 8

Interrogatory No. 8 requests that Plaintiffs describe specific instances in which they were allegedly exposed to mold or other harmful substances. (ECF No. 56-5 at 6). Defendants cite Mr. Heym's answer to Interrogatory No. 8 in support of their motion, which reads in part: "I do not have the exact dates for each time I was exposed to mold in the house, but it was multiple times throughout the 2.5 years I lived there." (ECF No. 56-6 at 7). Defendants do not, however, address Ms. Heym's answer. She states:

>I was exposed to mold while residing at APG. The exposure occurred within the home I was residing in, specifically in areas such as on the walls and inside kitchen cabinets. Unfortunately, I am unsure of the exact date of the initial exposure to mold as I began residing at APG in February 2020. I conducted a Mold Armor mold identification test in multiple rooms in the home on August 16, 2020, after I noticed a lot of surface mold. The mold testing confirmed the presence of several types of mold in the home.
>
>I first experienced physical symptoms, including breaking out in hives, during the follow-up inspection, which I recorded to show the remaining mold. The hives first appeared during this inspection, confirming to me that mold was still present in the home. I have video recordings from the walkthrough, which was conducted with permission, showing visible mold in these areas.

*Id.* Admittedly, neither Plaintiff provides definitive instances of mold exposure. However, given that Plaintiffs allege the mold was a consistent and widespread issue throughout the house during the two and half years they rented the APG home, the Court is uncertain how Plaintiffs could possibly compile a list of the times when they were exposed to mold. If mold was present in the home, Plaintiffs were presumably exposed to mold, at least to some degree, whenever they were in the home. Ms. Heym provides the timeframe in which she alleges she first identified the mold issue, and the date she purportedly identified the types of mold through testing. Under the circumstances, the Court concludes Plaintiffs have sufficiently answered Interrogatory No. 8.

d. <u>Interrogatory Nos. 10 and 11</u>

Interrogatory No. 10 asks Plaintiffs to state whether they have undergone any physical examinations within the past ten (10) years, and if so, to state the date of the examination, where it was conducted, who conducted it, and whether a report concerning the examination exists. (ECF No. 56-5 at 7-8; ECF No. 56-6 at 7-8). Interrogatory No. 11 requests Plaintiffs indicate whether they have consulted a healthcare provider in the past ten (10) years, and if so, to "specify in detail the nature of the condition for which [Plaintiffs] consulted the healthcare provider and the name and address of each healthcare provider[.]" *Id.*

Beginning with Interrogatory No. 11, both Plaintiffs state they have consulted with healthcare providers and refer Defendants to their answers to Interrogatory No. 9. *Id.* Interrogatory No. 9 asks Plaintiffs to "[s]tate whether or not [Plaintiffs] have been treated by, diagnosed by, or admitted to any hospital or other healthcare facility, the dates of treatment, diagnosis, or admission, the illness or condition involved, and the names and addresses of the [treating] healthcare provider(s)." *Id.* In response, both Plaintiffs provide a list of their medical providers, including their addresses, affiliated facilities, and the reason for treatment. *Id.* Defendants do not contend that Plaintiffs' answer to Interrogatory No. 9 is deficient, and it appears that the information sought

in Interrogatory No. 11 is duplicative of Interrogatory No. 9. The Court therefore declines to order Plaintiffs to supplement their answers to Interrogatory No. 11.

Turning to Interrogatory No. 10, Plaintiffs broadly respond that they have undergone physical examinations within the past ten years but do not reference specific dates or providers. Plaintiffs' answers are overly vague and do not adequately rely on information, such as medical records, which are available to Plaintiffs. *See Cohens*, 2013 at *4 ("In general, an answering party must provide to the requesting party all 'information that is available to it and that can be given without undue expense and labor.'") (citation omitted). The Court will therefore direct Plaintiffs to supplement their answers to Interrogatory No. 10.

e. Interrogatory No. 15

Interrogatory No. 15 requests that Plaintiffs identify any communications, either written or oral, that they had with other individuals regarding the alleged housing issues at APG, "including but not limited to other residents of APG, environmental consultants, and members and civilian employees of the Army, media outlet, or federal[,] state or local government agency, official, staff member, or employee[.]" (ECF No. 56-5 at 10-11; ECF No. 56-6 at 9-10). Plaintiffs both respond that they communicated with individuals associated with APG orally and by email, but provide no further information. *Id.* Plaintiffs' responses are vague and lack critical details, such as the types of communication, names and titles of the people Plaintiffs communicated with, or dates the communications took place. *Id.* Plaintiffs will accordingly be ordered to supplement their answers to Interrogatory No. 15.

For the foregoing reasons, Defendants' Motion to Compel (ECF No. 56) is GRANTED in part and DENIED in part. Plaintiffs shall supplement their document productions and serve supplemental answers to interrogatories in accordance with this Order within thirty (30) days.

Notwithstanding its informal nature, this letter constitutes an order of the Court and should be docketed as such.

Sincerely yours,

/s/

J. Mark Coulson
United States Magistrate Judge